# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| DON BLANKENSHIP,<br><br>    Plaintiffs,<br><br>  v.<br><br>KEVIN McLAUGHLIN, BRADLEY BLAKEMAN, and DOES 1-50 inclusive,<br><br>    Defendants. | Case No.: |

---

## COMPLAINT

---

## INTRODUCTION
### A Case of "Weaponized Defamation"

1. The mainstream media and much of the political establishment today routinely, and with actual malice, sets out to destroy public figures with outright lies. The competition for viewers is intense and nothing brings in eyeballs like scandal and degradation. So too is the establishment media's bloodthirsty desire to destroy those with whom they disagree politically. We live in an age of weaponized defamation where lies can be repeated in more ways at more times in more places with more speed than anyone could possibly have imagined even five years ago, much less in 1964 when the seminal case in the area of defamation of public figures was decided.

2.     This lawsuit follows a lawsuit filed in West Virginia by Don Blankenship against a large number of media companies as well as individuals who work for them as reporters, commentators, and who appear on their airways.  That lawsuit, styled *Blankenship v. Napolitano* (Civil Action 2:19-cv-00236) alleges claims for defamation and conspiracy (the Napolitano Action).  The defendants in this action, Kevin McLaughlin and Bradley Blakeman, were named in the Napolitano Action but were dismissed for lack of personal jurisdiction in West Virginia.  Both men are residents of Virginia and this lawsuit revives the claims against them.

<u>Background</u>

3.     In the 2018 election cycle, plaintiff Don Blankenship (sometimes referred to herein as "Plaintiff") was one of several Republican candidates vying to be the next United States Senator from West Virginia.  Mr. Blankenship sought the Republican nomination in a Primary held on May 8, 2018.  Mr. Blankenship personified and epitomized what it is to be a non-establishment candidate for office.  As such, certain parties within the DC establishment brought together its political operatives, including the National Republican Senatorial Committee ("NRSC") and its close associate, defendant Kevin McLaughlin, as well as establishment "political consultant" and pundit defendant Bradley Blakeman, together with establishment media outlets including Fox News, to smear Mr. Blankenship and torpedo his candidacy.

4.     Senate Majority Leader Mitch McConnell set in motion the wheels of a clandestine campaign – including a "menu of items" -- to destroy Mr. Blankenship and blatantly interfere in a federal election.  McConnell would make use of all the tools available to him, including the NRSC, Mr. McLaughlin, and Mr. Blakeman, as well as his contacts in establishment media such as Fox News, to bring down Mr.

Blankenship's candidacy.  Among the things used against Mr. Blankenship was the false claim that he was a "felon", when, as alleged in detail below, he was not.

5.      Defendant Kevin McLaughlin was a willing and critical participant in this scheme.  Mr. McLaughlin had been a senior advisor to the NRSC during the 2014 election cycle, later serving as its Deputy Executive Director for the 2016 election cycle and remained deeply connected to the political machine.  After the 2016 election cycle, Mr. McLaughlin became the Managing Director of a public affairs firm devoted to advancing Republican causes. Following the 2018 election cycle, Mr. McLaughlin passed back through Washington's revolving door to become Executive Director of the NRSC, a position he holds to this day.

6.      Beginning at about the end of March 2018 a number of individuals falsely called Mr. Blankenship a felon (this conduct is the subject of the Napolitano Action.)  In late April 2018, Mr. McLaughlin (at the time, still with the public affairs firm) appeared on CNN as a "GOP Political Strategist" and falsely described Mr. Blankenship as a "convicted felon" in order to injure his reputation and discredit his candidacy.   Mr. McLaughlin's CNN appearance was orchestrated and/or coordinated, and part of the scheme to ensure the people of West Virginia would not vote for the only candidate who was not a Washington insider.

7.      Following Mr. McLaughlin's appearance only a few weeks before the May 8, 2018 primary, others defamed Mr. Blankenship by falsely calling him a "felon".

8.      Fox News was a particularly loud voice, with its anchors and commentators defaming Mr. Blankenship and some participating in the conspiracy to stop Mr. Blankenship.  Among those who defamed Mr. Blankenship was Bradley Blakeman, who appeared on Fox's *The Evening Edit* on May 7, 2018 (the day before the West Virginia Primary) and defamed Mr. Blankenship as follows:  "[w]e can't

have the standard bearer of our party running for statewide office, and the guy is a *felon*."

9.      In the end, Mr. Blankenship was defeated in the nominating contest.

10.     Mr. Blankenship is well-acquainted with the rough and tumble of politics.  This is not that.  Mr. Blankenship *is not and never was a felon* and has never been convicted of a felony.  These false claims were not simple insults, but rather were part of a concerted plot by the political establishment, exemplified by Mr. McLaughlin and Mr. Blakeman, to destroy Mr. Blankenship personally and interfere in a federal election.

## JURISDICTION AND VENUE

11.     The United States District Court for the Eastern District of Virginia has original jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy in this matter exceeds $75,000, exclusive of interest and costs.

12.     Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391, and in the Alexandria Division under Local Rule 3 of that district, because each Defendant is a resident of the Commonwealth of Virginia and resides where that district and division are located.

## PARTIES

13.     Plaintiff Don Blankenship is an individual and a citizen of the State of Nevada who resides in West Virginia and was in 2018 a candidate for the United States Senate from West Virginia.

14.     Plaintiff is informed and believes that defendant Kevin McLaughlin is an individual who is a citizen of the Commonwealth of Virginia.

15.     Plaintiff is informed and believes that defendant Bradley Blakeman is an individual who is a citizen of the Commonwealth of Virginia.

16.    Plaintiff is informed and believes that defendants McLaughlin and Blakeman conspired with certain individuals whose identities are not currently known to Plaintiff.  These individuals are sued herein as Does 1 through 50 (the "Doe Defendants").  Plaintiff will amend this Complaint to allege the true names and capacities of those Doe Defendants when the same are ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of these fictitiously named Defendants was responsible in some manner for the occurrences alleged in this Complaint, as further set forth herein, and that Plaintiff's damages, as alleged in this Complaint, were proximately caused by these Defendants' conduct.

17.    Kevin McLaughlin, Bradley Blakeman, and the Doe Defendants are at times referred to herein collectively as "Defendants."

## GENERAL ALLEGATIONS

### Background

18.    Plaintiff Don Blankenship was born into a poor family in Appalachia, one of four children in a single-parent home.  Mr. Blankenship spent his summers working in the West Virginia coal mines.

19.    In 1982, Massey Energy offered Mr. Blankenship an accounting job then a modest mining concern.  Mr. Blankenship climbed the ranks, and in 1992, became president and CEO of Massey Energy, its first chief executive outside the Massey family.  With Mr. Blankenship at the helm, Massey Energy grew from a family-run outfit into the largest coal producer in Central Appalachia, employing thousands of miners and providing energy to millions of consumers, while generating billions of dollars in annual revenue.

### The Upper Big Branch Explosion

20.    On April 5, 2010, tragedy struck Raleigh County at the Upper Big Branch Mine.  Only a few hours after ventilation changes required by the Obama Administration were completed, cutting the mine's airflow in half, flammable gas

deep in the mine ignited, causing an explosion which took the lives of twenty-nine miners.

21.     President Obama and others in his administration immediately sought to divert blame from his Administration's culpability in the deadly accident. President Obama held a press conference ten days after the accident, long before anyone was able to enter the mine to begin an investigation, telling the world that the accident was attributable to "a failure first and foremost of management," i.e. Mr. Blankenship.  However, owing to large concentrations of toxic gas, no one accessed the mine to determine the explosion's cause until ***long after*** the President had pointed the finger of blame. In fact, scientific analysis of the explosion itself has ultimately shown that the explosion was caused by ill-advised and ill-conceived ventilation regulations imposed by the Obama Administration's Mine Safety and Health Administration (MSHA) which were completed just hours before the tragedy.

22.     MSHA led the Federal Government's investigation into the explosion. However, any conclusions reached by MSHA were inherently suspect because it was necessarily investigating its own actions.  In the months leading up to the accident, MSHA had required Massey to implement a new ventilation system at the Upper Branch Mine. Airflow into a mine is measured in "cubic feet per minute" (CFM).  At about the time of the accident, the law required that airflow be measured in the mine at 30,000 CFM.  Prior to MSHA requiring ventilation changes, the Upper Branch Mine was measured at four times the legal requirement: 120,000 CFM.  After the MSHA ventilation changes were implemented, the CFM dropped to 50,000 CFM.  Thus, the changes required by MSHA cut the mine's airflow by sixty percent.

23.     Eight months after the disaster, on December 6, 2010, MSHA concluded that a coal bed methane build-up ignited and created an explosion.

According to MSHA, the ventilation deficiencies in the mine – *which it had caused* – were a critical factor in causing the explosion.  Nonetheless, MSHA placed the blame on Massey and Mr. Blankenship.

24.     The Obama Administration detested Don Blankenship.  Mr. Blankenship had long been well-known as the most prolific provider and defender of coal miners' jobs in West Virginia.  He had also almost singlehandedly revived the conservative brand and the Republican party in West Virginia and had long been a vocal critic of Obama.  He was therefore an easy mark for the coal-hating Obama Administration and a target of its unrelenting war on coal.

25.     In April 2014, Mr. Blankenship released a documentary which refuted MSHA's findings and challenged the inherent conflict of having a regulatory agency investigate an explosion where the agency itself was likely at fault.  Among other things, the documentary identified powerful scientific evidence which refuted MSHA's conclusion that the explosion was caused by an influx of methane.  An analysis of the air vented from the mine at the time of the explosion revealed that the explosion almost certainly resulted from a very rare inundation of natural gas through a crack in the mine's floor.  A stronger airflow would have swept the gas out of the mine, but MSHA's required ventilation changes permitted the gas to accumulate and then ignite.

26.     The Obama Administration was irate over the documentary and almost immediately began a renewed investigation of Mr. Blankenship, following West Virginia Senator Joe Manchin's demand that Mr. Blankenship be indicted. Seven months after the documentary was released, on or about November 13, 2014, federal prosecutors from the Obama Justice Department charged Mr. Blankenship with three felonies, including conspiracy to defraud the Federal mine regulators. He was also charged with a misdemeanor, conspiring to violate mine safety laws.

Mr. Blankenship was not charged with causing any of the twenty-nine deaths in the April 5, 2010 Upper Big Branch Mine disaster.

27.     The Federal Government brought the full weight of its infinite resources to bear on Mr. Blankenship.  The matter went to trial in October 2015 and lasted about two months.

28.     Following lengthy deliberations, the West Virginia jury found Mr. Blankenship ***innocent on all felony charges*** on December 3, 2015.  The jury convicted him of the misdemeanor offense.  ***Notably, at that time, many media outlets accurately reported that Mr. Blankenship was convicted only of a misdemeanor and not for any of the felony counts he was facing.***

29.     A first-time misdemeanant is never (or virtually never) sent to prison, but thanks to the overarching and outrageous pressures brought to bear against him by the government, the Judge sentenced Mr. Blankenship on April 6, 2016 to one year in prison.  The Judge refused to stay Mr. Blankenship's sentence pending his appeal, and he served one year at Taft Prison in Kern County, California.  Mr. Blankenship may have been the only prisoner in any federal prison who had been convicted of just a misdemeanor.

30.     The Department of Justice Office of Professional Responsibility has since investigated the conduct of the United States Attorneys who prosecuted Mr. Blankenship -- Booth Goodwin and Steve Ruby.  The OPR found that massive prosecutorial misconduct had occurred in the prosecution of Mr. Blankenship, stating among other things that, "because Ruby and Goodwin recklessly violated the Department's discovery policies regarding the disclosure of discoverable statements, they committed professional misconduct."

31.     Mr. Blankenship was released from custody in the Spring of 2017.

## Mr. Blankenship Runs For Senate

32.     In January 2018, Mr. Blankenship formally announced his plans to run as a Republican for the U.S. Senate seat held by Senator Joe Manchin, a Democrat.  The Republican primary was scheduled for May 8, 2018.  Shortly thereafter, the fight for the Republican nomination was joined in earnest.  The race ultimately pitted Mr. Blankenship against West Virginia Congressman Evan Jenkins and Attorney General Patrick Morrisey, both longtime friends of the GOP Establishment within and without West Virginia.

33.     Thanks to Mr. Blankenship's longstanding prominence in West Virginia, the significant financial resources he brought to bear, his effective ads and success in debates, by early May 2018, Mr. Blankenship had moved into contention in the race.

## A Scheme Is Implemented to Defeat Mr. Blankenship

34.     About a month before the May 8, 2018 primary, based on internal polling, it became clear to Senate Majority Leader McConnell, the NRSC, and others in the GOP Establishment, as well as many in the mainstream media, that Mr. Blankenship had drawn even in the race with the other two contenders. Plaintiff is informed and believes that in the weeks before the May 8th Primary, several meetings occurred, attended by Leader McConnell, members of the NRSC, and others, including some or all of the Doe Defendants, in which a "menu" describing possible ways to defeat Mr. Blankenship was discussed. Mr. McLaughlin and/or Mr. Blakeman were either aware of the meetings themselves, the "menu" of items, or both.  Some of these meetings may have occurred in Federal Government offices in violation of Federal Campaign finance laws.  At these meetings, the attendees determined and agreed that Mr. Blankenship's candidacy must be stopped at all costs, including by smearing Mr. Blankenship in the media with false stories, including by falsely calling him a felon.  At the end of April 2018,

Leader McConnell expressed his disdain for Mr. Blankenship this way: "I hope we actually nominate someone who can actually win the election."

36. Plaintiff is informed and believes that Defendant Kevin McLaughlin was a key member of this scheme. Mr. McLaughlin is a seasoned Republican insider who served as a senior advisor to the NRSC during the 2014 election cycle and its Deputy Executive Director in the 2016 election cycle, before leaving to work as a freelance GOP strategist. Following the 2018 general election, Mr. McLaughlin would return to the NRSC, where he is serving as its Executive Director.

36. Plaintiff is informed and believes that Defendant Bradley Blakeman was also a key member of this scheme. Mr. Blakeman is an experienced Republican political operative who served as a White House Assistant to President George W. Bush after working on the Bush-Cheney 2000 campaign and has been a contributor to Fox News for over a decade. He is currently the principal of The 1600 Group, a Virginia-based lobbying group.

37. The scheme to defeat Mr. Blankenship with defamation likely has origins, in some form or another, even before the "menu of items" were developed. On or about March 25, 2018, persons unknown, including, on information and belief, the Doe Defendants created and carried out a "push poll" wherein phone operators would call potential voters in West Virginia purporting to conduct political polling and asking the voters questions predicated on the idea that Mr. Blankenship was a "felon." Rather than simply to collect information to assist with the defamation campaign against Mr. Blankenship, the "push poll" also was intended to defame Mr. Blankenship and derail his campaign by planting the false idea in the mind of the voters "polled" that Mr. Blankenship was a felon and/or had been convicted of a felony. Plaintiff intends to amend this Complaint once the

identities of the persons or entities responsible for this defamatory "push polling," including but not limited to the Doe Defendants, are ascertained.

38.     On April 10, 2018, the political action committee ostensibly supporting Mr. Morrisey's campaign –35th PAC – responded to a tweet by Mr. Blankenship, with the following defamatory tweet: "You are also a convicted **felon** hurting West Virginia families."  Mr. Blankenship communicated directly with the major funders of this PAC and advised that this tweet was false.  No correction was ever issued.  At the time this tweet was issued, the authors (and likely the PAC's top donors as well) knew that it was false, but nonetheless proceeded to publish because of their malice toward Mr. Blankenship.

39.     On April 25, 2018, Judge Andrew Napolitano intensified the attacks on Mr. Blankenship and his candidacy by deploying falsehoods on Fox News, an extremely influential source of information for West Virginia voters.  Judge Napolitano appeared on Fox News' daytime program *Outnumbered*, alongside host Marie Hart, among others.  During a segment concerning the West Virginia Primary, Judge Napolitano took part in the following exchange:

> **Harf**: "Don Blankenship has long been a very polarizing figure in West Virginia.  He went to jail, actually, after a really tragic coal-mining incident—"
>
> **Napolitano**: "*He went to jail for manslaughter*, after being indicted."
>
> **Harf:** "Yes, exactly."

40.     The coordinated pipeline between Fox News and the GOP Establishment has been widely documented.  As only one example, during the investigation into Russian interference in the 2016 election, Rick Gates, the President's deputy campaign manager, told investigators that Sean Hannity, a Fox News commentator and the face of the network, "tailored his shows to the agenda [Campaign Manager Paul] Manafort suggested."  When associates of then-House Intelligence Committee chairman Devin Nunes were drafting the public

condemnation of the FBI's investigation into Russian interference, a document that would become known as the "Nunes Memo," Hannity and Manafort discussed what it would contain, and Hannity was given information on the Memo before it was released to the public.

41.     Although Fox figures prominently, the defamation was not limited to that network.  On April 29, 2018, Defendant Kevin McLaughlin, now the Executive Director of the NRSC, appeared on the program *CNN Newsroom* on CNN's network, alongside host Dana Bash and guest Alex Isenstadt, as part of a segment about Mr. Blankenship's candidacy.  Mr. McLaughlin was introduced as "working with the National Republican Party in West Virginia, the last time Republicans tried to beat [current West Virginia Senator] Joe Manchin" and was titled as a "GOP Political Strategist."  Several clips of Mr. Blankenship were aired during the segment.  During the segment, McLaughlin stated the following, referring to Mr. Blankenship:

> **McLaughlin**: "Well, I mean, pick your poison with this guy, right? He doesn't live in West Virginia, he's a ***convicted felon***, you know, he says -"
> **Bash**: "He's got a house in Nevada."
> **McLaughlin**: "Exactly."

42.     Plaintiff is informed and believes that Mr. McLaughlin made his appearance on CNN as part of the scheme by McConnell, the NRSC, the Doe Defendants, and/or other Establishment politicians or operatives to sufficiently injure Mr. Blankenship's reputation such that he would lose the Primary election. Specifically, McLaughlin's purpose was to inject and publicize the defamatory falsehood that Mr. Blankenship was a "convicted felon" in order to undermine Mr. Blankenship's candidacy and achieve the purpose of the conspiracy.

43.     Mr. Blankenship's conviction was a matter of public record which was readily available to Mr. McLaughlin.  Mr. McLaughlin is a sophisticated and

knowledgeable political operative with extensive experience and involvement in politics.  Plaintiff is informed and believes that the organization for which Mr. McLaughlin worked at the time of his comments had adopted and enforced ethical and other standards which govern his conduct. In addition, Mr. McLaughlin was bound by the general obligations for honesty in his profession.  Plaintiff is further informed and believes that these standards were applicable to Mr. McLaughlin at the time he uttered the defamatory statement alleged above.  Mr. McLaughlin's departure from these standards, and from generally accepted standards of accuracy and honesty evidence actual malice.

### Mr. Blankenship Crushes His Opponents In The May 1st Nationally-Televised Fox Debate Causing The Smears To Escalate

44.     On May 1, 2018, one week before the primary election, Mr. Blankenship participated in a debate with the other two Primary candidates which was televised nationally on the Fox News Channel.  The national broadcast, hosted by Fox News stars Bret Baier and Martha MacCallum, resulted from the intense national interest in the West Virginia primary in political circles, because of concerns about Mr. Blankenship, and a by-then-widespread belief that the Republican primary winner could defeat Democrat Joe Manchin in the general election because of the state's massive support for President Trump in 2016.  Mr. Blankenship addressed his conviction and imprisonment right out of the gate, stating in no uncertain terms: "I faced thirty years in prison for a fake charge, and I beat all three of the felonies. … It's incredible, they sent me to prison for a misdemeanor.  I was the only prisoner there that was a misdemeanant."  Most objective observers concluded that he won the debate handily and, by some estimates, gained eight points against his opponents.

45.     As the election approached, the smears continued, resonating with earlier efforts by Mr. McLaughlin and others.  From the time that Mr. McLaughlin

took action, the "felon" smear appeared on the airwaves or in print over a dozen times.  On May 7, 2018, the day before the West Virginia Primary, it was Defendant Bradley Blakeman's turn.  Mr. Blakeman, a regular Fox News guest, appeared on *The Evening Edit* with John Layfield, where Mr. Layfield introduced Mr. Blakeman as a "Deputy Advisor to [former President] George W. Bush."  As soon as Mr. Layfield turned the conversation to West Virginia, Mr. Blakeman wasted no time before stating that "[w]e can't have the standard bearer of our party running for statewide office, and the guy is a ***felon***."  Hammering home Mr. Blakeman's defamatory point about Mr. Blankenship, Mr. Layfield then said "[R]ight now Blankenship is actually leading in the polls, by some polls that have come out.  Thomas Massey, the congressman, says that it shows that Americans are just gonna vote for the craziest S.O.B. out there.  [To Blakeman:]  Is this Americans who are just voting for the craziest person out there?  Can this happen?  We've got a ***felon*** who's got a probation officer who could end up in Congress."

46.     Mr. Blankenship's conviction was a matter of public record which was readily available to Mr. Blakeman. Blakeman is a sophisticated and knowledgeable political operative with extensive experience and involvement in politics.  Mr. Blakeman was bound by the general obligations for honesty in his profession. Plaintiff is further informed and believes that these standards were applicable to Mr. Blakeman at the time he uttered the defamatory statement alleged above.  Mr. Blakeman's departure from these standards, and from generally accepted standards of accuracy and honesty evidence actual malice.

47.     Defendant Blakeman and Mr. Layfield were not the only Fox News personalities participating in Fox's election-eve mudslinging.  The same day, Fox Business Network program *Coast to Coast with Neil Cavuto,* Mr. Cavuto falsely and maliciously described Mr. Blankenship as "the outside candidate, the one that's a ***convicted felon*** …."  As described above, Fox knew this to be false because,

among other reasons and without limitation, it had previously reported the opposite, *i.e.*, that Mr. Blankenship had been acquitted of all felonies.  Mr. Cavuto either knew, or plainly should have known, that this vile statement was false. Also on May 7, 2018, Stephanie Hamill appeared on Fox Business Network and observed of Mr. Blankenship, that "it might be difficult for him to actually win a general election because of his issue being a ***convicted felon*....**" These efforts were followed by eight more defamatory "felon" claims from various outlets on the day of the election.

48.     The evidence in this case will prove Defendants Kevin McLaughlin and Bradley Blakeman, sophisticated members of the DC Establishment, acted with actual malice and reckless disregard for the truth.  As a result, Mr. Blankenship has suffered enormous damages.  Mr. Blankenship possesses a proven record of adding billions of dollars in value to an enterprise.  As Massey's CEO, Mr. Blankenship grew the company from a valuation of $150 million to $7.8 billion (while most others in the marketplace were failing).  The defamation of Mr. Blankenship as a "felon" and a person sent to prison "for manslaughter" has so smeared his reputation that he has been prevented from pursuing other businesses and opportunities and generating similar returns of billions of dollars.  Because of this harm and a variety other injuries Mr. Blankenship has suffered, he seeks damages in an amount not less than $2 billion dollars.

49.     In addition, Mr. Blankenship seeks substantial punitive damages.  The purpose of punitive damages is to punish a defendant for outrageous conduct and/or to reform or deter the defendant and others from engaging in conduct similar to that which formed the basis of the lawsuit.  The defendants in this case are sophisticated political operatives who willfully participated in a scheme to bring down a candidate for public office through defamatory falsehoods, and who, as the current Executive Director of the NRSC and an active political consultant

respectively, are poised to do so again. A large punitive damage award is necessary to adequately punish and/or deter the Defendants from repeating this conduct.

## COUNT I

## DEFAMATION – ALL DEFENDANTS

50. Plaintiff reincorporates and re-alleges paragraphs 1 through 49 above as though set forth fully herein.

51. Defendants made statements of fact as set forth above, which were materially false, namely that Mr. Blankenship was a "felon" or "convicted felon." To the extent any of Defendants' above-described statements were statements of opinion (and they were not), each such purported opinion implied the existence of undisclosed defamatory facts as the basis for the opinion, in that such opinions would appear to a reasonable person to be based on the untrue and defamatory facts that Mr. Blankenship was a felon and/or had been convicted of a felony and/or went to jail for manslaughter.

52. Defendants caused to be published the defamatory statement that Mr. Blankenship was a "felon" or "convicted felon."

53. Defendants' statements were defamatory in that stating that Mr. Blankenship was a felon and/or had been convicted of a felony was of a character so harming to Mr. Blankenship as to lower him in the estimation of the community and to deter third persons from associating or dealing with him.

54. Defendants' statements were defamatory *per se* in that, without limitation, they were and are incapable of an innocent meaning and charged Mr. Blankenship with the commission of crimes of which he was acquitted, and therefore imputed to Mr. Blankenship a lack of integrity in the performance of his duties and prejudiced him in his profession or trade.

55. Defendants' statements with respect to Mr. Blankenship were materially and entirely false in that Mr. Blankenship is not a felon and has never

16

been convicted of a felony, and in fact was acquitted of all felony charges with which he had ever been charged.

56.     Defendants made their defamatory statements with actual malice, that is, actual knowledge of the falsity of their respective statements or, at a minimum, with reckless and willful disregard of the truth or falsity of their respective statements.  Among other reasons and without limitation, Defendants' wrongful conduct was motivated by the matters discussed herein above.

57.     Anyone who consulted the freely-available public records of Mr. Blankenship's trial and conviction (including previous accurate reports of Mr. Blankenship's acquittals), would know that Mr. Blankenship was acquitted of all felony charges, that Mr. Blankenship was convicted only of a misdemeanor, and that Mr. Blankenship has never been convicted of a felony.

58.     Defendants intended to cause injury to Mr. Blankenship by publishing their false defamatory statements.

59.     Mr. Blankenship has suffered injury to his reputation, humiliation, and embarrassment by reason of Defendants' defamatory statements, and has been damaged thereby in an amount to be proven at trial, but which exceeds the jurisdictional minimum of this Court.

## COUNT II

## STATUTORY CONSPIRACY (Va. Code §§ 18.2-499 and 18.2-500) – ALL DEFENDANTS

60.     Plaintiff reincorporates and re-alleges paragraphs 1 through 59 above as though set forth fully herein.

61.     Plaintiff is informed and believes that Defendants, together with the NRSC, 35th PAC, and others, shared a common plan to injure Plaintiff in his reputation, business, and trade, including but not limited to by using the false and defamatory claim that Plaintiff was a "felon" or "convicted felon" in order to defeat

Plaintiff's campaign in the West Virginia Primary Election.  Defendants, and each of them, among others and without limitation, knew that this claim was untrue, as Plaintiff had been convicted only of a misdemeanor and had been acquitted of all felony charges.

62.     All Defendants acted willfully and maliciously with the intent of harming Plaintiff in his reputation and in his business as a political candidate and energy executive.

63.     As a result, all Defendants violated Va. Code §§ 18.2-499 and 18.2-500.

64.     Defendant Kevin McLaughlin committed overt acts in furtherance of the conspiracy to defame Plaintiff when he appeared on CNN as a "GOP Political Strategist" and stated that Plaintiff was a "convicted felon" in the lead-up to the 2018 West Virginia Primary Election.

65.     Defendant Bradley Blakeman committed overt acts in furtherance of the conspiracy to defame Plaintiff when he appeared on Fox Business Network and called Mr. Blankenship a "felon."

66.     35th PAC committed an overt act in furtherance of the conspiracy by making the defamatory statement on Twitter that Plaintiff was a "convicted felon" in the lead-up to the 2018 West Virginia Primary Election.

67.     Some or all of the Doe Defendants committed overt acts in furtherance of the conspiracy by conducting the defamatory "push poll" wherein they falsely stated and implied to West Virginia potential voters that Plaintiff was a "felon" in the lead-up to the 2018 West Virginia Primary Election.

68.     Some or all of the Doe Defendants committed further overt acts in furtherance of the conspiracy by publishing and aiding in the publication of false and defamatory claims about Mr. Blankenship during Mr. Blankenship's 2018

campaign.  Plaintiff will amend this Complaint to allege further facts concerning the acts of these Doe Defendants as they are ascertained.

## COUNT III

## COMMON LAW CONSPIRACY – ALL DEFENDANTS

69.     Plaintiff reincorporates and re-alleges paragraphs 1 through 68 above as though set forth fully herein.

70.     Plaintiff is informed and believes that Defendants, together with the NRSC, 35th PAC, and others, shared a common plan to injure Plaintiff in his reputation, business, and trade, including but not limited to by using the false and defamatory claim that Plaintiff was a "felon" or "convicted felon" in order to defeat Plaintiff's campaign in the West Virginia Primary Election.  Defendants, and each of them, among others and without limitation, knew that this claim was untrue, as Plaintiff had been convicted only of a misdemeanor and had been acquitted of all felony charges.

71.     All Defendants acted willfully and maliciously with the intent of harming Plaintiff in his reputation and in his business as a political candidate and energy executive.

72.     Defendant Kevin McLaughlin committed overt acts in furtherance of the conspiracy to defame Plaintiff when he appeared on CNN as a "GOP Political Strategist" and stated that Plaintiff was a "convicted felon" in the lead-up to the 2018 West Virginia Primary Election.

73.     Defendant Bradley Blakeman committed overt acts in furtherance of the conspiracy to defame Plaintiff when he appeared on Fox Business Network and called Mr. Blankenship a "felon."

74.     35th PAC committed an overt act in furtherance of the conspiracy by making the defamatory statement on Twitter that Plaintiff was a "convicted felon" in the lead-up to the 2018 West Virginia Primary Election.

75.     Some or all of the Doe Defendants committed overt acts in furtherance of the conspiracy by conducting the defamatory "push poll" wherein they falsely stated and implied to West Virginia potential voters that Plaintiff was a "felon" in the lead-up to the 2018 West Virginia Primary Election.

76.     Some or all of the Doe Defendants committed further overt acts in furtherance of the conspiracy by publishing and aiding in the publication of false and defamatory claims about Mr. Blankenship during Mr. Blankenship's 2018 campaign.  Plaintiff will amend this Complaint to allege further facts concerning the acts of these Doe Defendants are ascertained.

## DEMAND

Plaintiff demands judgment against all Defendants for the following damages and other relief:

### AS TO COUNT ONE

1.     Judgment for compensatory damages;

2.     A permanent injunction against Defendants prohibiting republication of the defamatory statements;

### AS TO COUNT TWO

3.     Judgment for compensatory damages;

4.     A permanent injunction against Defendants prohibiting republication of the defamatory statements;

5.     Treble damages pursuant to Va. Code § 18.2-500(A);

6.     Reasonable attorney fees pursuant to Va. Code § 18.2-500(A);

### AS TO COUNT THREE

7.     Judgment for compensatory damages;

8.      A permanent injunction against Defendants prohibiting republication of the defamatory statements;

**AS TO ALL COUNTS**

9.      Judgment for punitive damages;

10.     Costs of suit incurred herein;

11.     Such statutory pre-judgment and post-judgment interest as may be appropriate; and

12.     Such further relief as the Court may deem just and proper.

**\*PLAINTIFF DEMANDS A JURY TRIAL**

**DON BLANKENSHIP**

Dated:  April 17, 2020

By: */s/ M. F. Connell Mullins, Jr.*

M. F. Connell Mullins, Jr. (VSB No. 47213)
cmullins@spottsfain.com
Kasey L. Hoare (VSB No. 92289)
khoare@spottsfain.com
SPOTTS FAIN PC
411 E. Franklin St., Ste. 600
Richmond, VA 23219
Tel:   (804) 697-2000
Fax:  (804) 697-2100

Eric P. Early, CA State Bar No. 166275
(*pro hac vice application forthcoming*)
Jeremy Gray, CA State Bar No. 150075
(*pro hac vice application forthcoming*)
Kevin S. Sinclair, CA State Bar No. 254069
(*pro hac vice application forthcoming*)
EARLY SULLIVAN WRIGHT GIZER &
McRAE LLP
6420 Wilshire Blvd., 17th Fl.

Los Angeles, CA 90048
Tel:  (323) 301-4660
Fax:  (323) 301-4676

Attorneys for Plaintiff Don Blankenship